UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RODNEY JETT,

                Plaintiff,

v.                                                           Case No. 25-cv-1066-pp

SGT. HAUPT, *et al.*,

                Defendants.

**ORDER GRANTING PLAINTIFF'S MOTION FOR LEAVE TO PROCEED WITHOUT PREPAYING FILING FEE (DKT. NO. 2), DENYING AS MOOT PLAINTIFF'S MOTION FOR ORDER TO USE RELEASE ACCOUNT (DKT. NO. 8) AND SCREENING COMPLAINT UNDER 28 U.S.C. §1915A**

Plaintiff Rodney Jett, who is incarcerated at Columbia Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants provided inadequate medical treatment. This decision resolves the plaintiff's motions for leave to proceed without prepaying the filing fee, dkt. no. 2, and for an order to pay the filing fee from his release account, dkt. no. 8, and screens his complaint, dkt. no. 1.

**I.    Motion for Leave to Proceed without Prepaying the Filing Fee (Dkt. No. 2)**

The Prison Litigation Reform Act (PLRA) applies to this case because the plaintiff was incarcerated when he filed his complaint. See 28 U.S.C. §1915(h). The PLRA lets the court allow an incarcerated plaintiff to proceed with without prepaying the civil case filing fee. 28 U.S.C. §1915(a)(2). When funds exist, the plaintiff must pay an initial partial filing fee. 28 U.S.C. §1915(b)(1). He then

1

must pay the balance of the $350 filing fee over time, through deductions from his prison trust account. Id.

On July 28, 2025, the court ordered the plaintiff to pay an initial partial filing fee of $11.55. Dkt. No. 5. The court received that fee on August 18, 2025. Because the court has received that payment, the court will deny as moot the plaintiff's motion to pay the initial partial filing fee from his release account. Dkt. No. 8. The court will grant the plaintiff's motion for leave to proceed without prepaying the filing fee and will require him to pay the remainder of the filing fee over time in the manner explained at the end of this order.

## II. Screening the Complaint

### A. Federal Screening Standard

Under the PLRA, the court must screen complaints brought by incarcerated persons seeking relief from a governmental entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated person raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include

2

"a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, "accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cnty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. County of Milwaukee, 570 F.3d 824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The complaint concerns events that allegedly occurred while the plaintiff was incarcerated at Green Bay Correctional Institution. Dkt. No. 1 at 1. It names as defendants Sergeant Haupt, Nurse Jane Doe and Health Services Unit (HSU) Manager Utter. Id.

The plaintiff alleges that at around 11:15 p.m. on September 16, 2022, while he was in segregation housing at Green Bay, he began to have difficulty breathing. Id. at 2. He notified Officer Jackson (not a defendant), who told Sergeant Haupt. Id. Haupt came to the plaintiff's cell in the segregation unit. Id. The plaintiff told Haupt that he had asthma, that he could not breathe and that he wanted to see staff at the HSU. Id. Haupt left to call the HSU, and when he came back he told the plaintiff that Nurse Jane Doe had said the plaintiff should use his inhaler. Id. The plaintiff told Haupt that his inhaler was not working, and he twice reiterated that he could not breathe and wanted to see the HSU. Id. Haupt again told the plaintiff to use his inhaler and said, "it look[s] like you're breathing to me." Id. Haupt then left the plaintiff's cell and did not again call the HSU to tell them that the plaintiff continued to have difficulty breathing. Id.

The plaintiff alleges that he "had to use [his] inhaler repeatedly all night to keep breathing." Id. at 3. He asserts that Jane Doe "put [his] life in danger" by not promptly assessing him at his cell "like the law bound her to do." Id. The plaintiff wrote an institutional complaint about the situation, but he says that "they" dismissed his complaint after HSU Manager Utter provided documents and discussed the incident with the complaint examiner. Id. The plaintiff says that Utter's documents showed that the HSU met with the plaintiff at 1:00 p.m. and tested his oxygen level, which was at 98%. Id. The plaintiff says that the documents are "falsified" because although he met with HSU staff at 1:00 p.m., that "was a scheduled appointment and it was not for breathing complications

and it is not related to [his] breathing complications that happen at 11:15 pm that night." Id.

The plaintiff seeks $3 million total in punitive and compensatory damages. Id. at 4.

C.   Analysis

The court analyzes the plaintiff's allegations about his medical treatment under the Eighth Amendment. Gabb v. Wexford Health Sources, Inc., 945 F.3d 1027, 1033 (7th Cir. 2019) (citing Pyles v. Fahim, 771 F.3d 403, 408 (7th Cir. 2014)). Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." Estelle v. Gamble, 429 U.S. 97, 105 (1976). To state a valid Eighth Amendment claim, the plaintiff must allege both that he "suffered from an objectively serious medical condition" and that the defendants were "deliberately indifferent to that condition." Petties v. Carter, 836 F.3d 722, 728 (7th Cir. 2016) (*en banc*). "The standard of deliberate indifference 'requires more than negligence or even gross negligence; a plaintiff must show that the defendant was essentially criminally reckless, that is, ignored a known risk.'" Stewart v. Wexford Health Sources, Inc., 14 F.4th 757, 763 (7th Cir. 2021) (quoting Huber v. Anderson, 909 F.3d 201, 208 (7th Cir. 2018)).

The plaintiff alleges that he suffers from asthma and was having difficulty breathing the night of September 16, 2022. "[A]sthma can be, and frequently is, a serious medical condition, depending on the severity of the attacks." Board v. Farnham, 394 F.3d 469, 484 (7th Cir. 2005) (citing Garvin v.

Armstrong, 236 F.3d 896, 898 (7th Cir. 2001)). For the purposes of screening, the court finds that the plaintiff's allegations about his asthma satisfy the objective component of an Eighth Amendment claim. The remaining question is whether his allegations also satisfy the subjective component for each defendant.

The complaint does not satisfy the subjective component for a claim against Sergeant Haupt. The plaintiff alleges that he told Haupt he was having difficulty breathing, and that Haupt contacted the HSU. Nurse Doe at the HSU told Haupt that the plaintiff could use his inhaler, and Haupt relayed that message to the plaintiff. A non-medical prison official like Sergeant Haupt is entitled to defer to the judgment of the HSU staff so long as he does not "ignore[ ] a prisoner's complaints" or disregard "an excessive risk to inmate health or safety." Arnett v. Webster, 658 F.3d 742, 755 (7th Cir. 2011) (citing Greeno v. Daley, 414 F.3d 645, 656 (7th Cir. 2005)). The complaint does not allege that Haupt did either of those things. He did not ignore the plaintiff and instead addressed his concern, called the HSU and told the plaintiff that the nurse had instructed the plaintiff to use his inhaler for his breathing difficulties. Nor did Haupt disregard an excessive risk to the plaintiff's health. The plaintiff alleges that he repeatedly told Haupt that his inhaler did not work, that he could not breathe and that he needed to have HSU staff assess him. But Haupt reasonably could disbelieve the plaintiff's assertions that he could not breathe because he witnessed the plaintiff breathing, talking to him and repeatedly demanding to see the HSU. See Horshaw v. Casper, 910 F.3d 1027, 1029 (7th Cir. 2018) (no deliberate indifference where guard reasonably

disbelieves prisoner's assertion). Because the complaint does not state a claim against Haupt, the court will dismiss him as a defendant.

The plaintiff alleges that Nurse Jane Doe should have done more to assess his condition than simply telling Haupt over the phone that the plaintiff could use his inhaler. The plaintiff says that HSU staff assessed him about ten hours earlier, took his vitals and found his blood-oxygen level to be at 98%. That suggests that the plaintiff was not in distress that afternoon. But he also could have suddenly become unable to breathe that night, as he alleges. Jane Doe perhaps could have done more, such as ask Haupt additional questions about the plaintiff's condition. Or perhaps Haupt told the nurse that the plaintiff was talking and breathing without issue, and she determined that he would be fine with only his inhaler. If that is what occurred, then Nurse Doe likely did not violate the plaintiff's rights. See Daniels v. Harper, 640 F. App'x 519, 521 (7th Cir. 2016) (citing Williams v. Rodriguez, 509 F.3d 392, 402 (7th Cir. 2007)) (incarcerated person who told nurse "only that he was having difficulty breathing because of asthma and wanted treatment" did not state Eighth Amendment claim against nurse for failure to provide immediate treatment). But the complaint does not allege any of these things, so the court cannot infer whether they did or did not occur. Construing the allegations in the plaintiff's favor, the court finds that he alleges enough to suggest that Nurse Doe was aware of his serious medical need but disregarded it by telling Haupt only that the plaintiff could use his inhaler without visually assessing or examining the plaintiff.

The complaint has not stated a claim against HSU Manager Utter. The plaintiff has not alleged that Utter was involved in his treatment on September 16, 2022. He says only that that she later provided information to the complaint examiner, who ultimately dismissed the plaintiff's complaint about the incident. Utter cannot be held responsible after-the-fact for the alleged misconduct of nursing staff. See Iqbal, 556 U.S. at 676; George v. Smith, 507 F.3d 605, 609 (7th Cir. 2007) ("Only persons who cause or participate in [constitutional] violations are responsible."). The plaintiff says that Utter provided documents to the complaint examiner showing that the plaintiff was seen in the afternoon of September 16, and that his vitals were normal. The plaintiff claims these documents are "falsified," but he then clarifies that the documents are accurate but unrelated to his difficulty breathing at night on September 16. Utter did not violate the plaintiff's rights by providing information to the complaint examiner related to the plaintiff's grievance, even if it was irrelevant or incorrect. See Saffold v. Fuller, Case No. 22-cv-1467, 2023 WL 3932855, at *11 (E.D. Wis. June 9, 2023) (citing Reimann v. Frank, 397 F. Supp. 2d 1059, 1076 (W.D. Wis. 2005)) ("Misleading an inmate complaint examiner is unprofessional, but it does not violate the plaintiff's constitutional rights."). The court will dismiss Utter as a defendant.

The court will allow the plaintiff to proceed on an Eighth Amendment claim against Nurse Jane Doe. The court will add Green Bay Warden Chris Stevens as a defendant for the limited purpose of helping the plaintiff identify the Doe nurse. Warden Stevens is not required to respond to the complaint.

After the attorney for Warden Stevens files an appearance, the plaintiff must serve discovery on Warden Stevens (by mailing it to Stevens's attorney at the address in the notice of appearance) to get information that will help him identify the name of the Doe nurse. For example, the plaintiff may serve interrogatories (written questions) under Fed. R. Civ. P. 33 or document requests under Fed. R. Civ. P. 34. Because the plaintiff has not stated a claim against Warden Stevens, the plaintiff's discovery requests must be limited to information or documents that will help him learn the real name of the Doe nurse he is suing. The plaintiff may not ask Stevens about any other topic, and Stevens is under no obligation to respond to requests about any other topic.

After the plaintiff learns the name of the nurse who he alleges violated his constitutional rights, he must file a motion to substitute her name for the Doe placeholder. The court will dismiss Warden Stevens as a defendant once the plaintiff identifies the Doe defendant's name. The plaintiff must identify the name of the Doe nurse **within sixty days of Warden Stevens's attorney appearing**. If he does not identify the Doe nurse or does not explain to the court why he is unable to do so, the court may dismiss his case based on his failure to diligently pursue it. Civil Local Rule 41(c) (E.D. Wis.). Once the plaintiff has identified the Doe nurse, and the nurse has responded to the plaintiff's complaint, the court will issue a scheduling order setting deadlines for the completion of discovery and for filing dispositive motions.

There is one final matter that the court must address. On September 8, 2025, the court received a letter from the plaintiff in which he requests that a

magistrate judge "take over this case" because this court did not immediately screen his complaint or rule on his motion to pay the initial partial filing fee from his release account. Dkt. No. 11. This case originally was assigned to Magistrate Judge Stephen Dries, but it was reassigned to this court after the court received the plaintiff's magistrate judge consent form, in which the plaintiff refused to consent to the authority of a magistrate judge to decide the case. Dkt. No. 7. So the case was randomly reassigned to this district judge. If the plaintiff has changed his mind, he may submit a new magistrate judge consent form with a letter explaining that he is revoking his previous refusal and now consents to have a magistrate judge decide this case. Even if the plaintiff does that, the court will not reassign this case to a magistrate judge unless the defendant also consents to have the case heard before a magistrate judge. See 28 U.S.C. §636(c)(1).

Regardless of which court hears the remainder of this case, the plaintiff should be aware that all federal judges—whether magistrate, district or appellate judges—are busy. His case is one of hundreds pending before the court. He cannot expect an immediate response to his non-urgent motions, like his request for a court order allowing him to pay his filing fee from his release account. Dkt. No. 8. The court also observes that although the plaintiff stated in that motion that he was "indigent" and had "no money in [his] regular account," id., the court received the $11.55 fee only two weeks later—ten days before his August 28, 2025 deadline to pay it. If the plaintiff had not been able to pay the fee by the August 28 deadline, as he claimed he could not, the court

likely would have granted his request to pay the initial partial filing fee from his release account and given him additional time to pay the fee. Because he paid the fee early, no court order was necessary. In addition, Judge Dries already had told the plaintiff that he could pay the initial $11.55 fee from his release account in the order assessing that fee. Dkt. No. 5 at 3 ("To the extent the plaintiff does not have enough money in his regular account to make the initial partial payment, the plaintiff is responsible for making arrangements with authorities to pay the remainder of the initial partial filing fee from the plaintiff's release account."). There was no reason for the court to prioritize the plaintiff's motion to pay his fee from his release account or to issue an immediate decision.

## III. Conclusion

The court **GRANTS** the plaintiff's motion for leave to proceed without prepaying the filing fee. Dkt. No. 2.

The court **DENIES AS MOOT** the plaintiff's motion for a court order allowing him to pay the initial partial filing fee from his release account. Dkt. No. 8.

The court **DISMISSES** defendants Sergeant Haupt and HSU Manager Utter.

The court **DIRECTS** the clerk's office to add Green Bay Correctional Institution Warden Chris Stevens as a defendant for the limited purpose of helping the plaintiff identify the real name of the Jane Doe nurse.

Under an informal service agreement between the Wisconsin Department of Justice and the court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on Warden Stevens. The court **ORDERS** that Warden Stevens does not have to respond to the complaint; however, he must respond to discovery requests that the plaintiff serves in an effort to identify the Doe nurse. Warden Stevens does not have to respond to discovery requests about any other topic.

The court **ORDERS** the plaintiff to identify the real name of the Doe nurse **within sixty days of Warden Stevens's attorney appearing**. If the plaintiff does not and does not explain to the court why he is unable to identify the Doe nurse's real name, the court will dismiss this case based on the plaintiff's failure to diligently pursue it.

The court **ORDERS** that the agency that has custody of the plaintiff must collect from his institution trust account the **$338.45** balance of the filing fee by collecting monthly payments from the plaintiff's prison trust account in an amount equal to 20% of the preceding month's income credited to the plaintiff's trust account and forwarding payments to the Clerk of Court each time the amount in the account exceeds $10 in accordance with 28 U.S.C. §1915(b)(2). The agency must clearly identify the payments by the case name and number. If the plaintiff transfers to another county, state or federal institution, the transferring institution must forward a copy of this order, along with the plaintiff's remaining balance, to the receiving institution.

The court will send a copy of this order to the Warden at Columbia Correctional Institution, where the plaintiff is incarcerated.

The court **ORDERS** that the parties must not begin discovery (except to identify the Jane Doe nurse) until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[1] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the Clerk of Court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody

---

[1] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

Dated in Milwaukee, Wisconsin this 16th day of September, 2025.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**